FILED

12 NOV -1  PH 2:20

M. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . FLORIDA
TAMPA, FLORIDA

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LISA HERRERA AND DENNIS
HERRERA AS CO-PERSONAL
REPRESENTATIVES OF THE
ESTATE OF ISABELLA HERRERA,
DECEASED,

        **Plaintiffs,**

vs.

Case No.: 8:12-cv2484 30EMJ

HILLSBOROUGH COUNTY
SCHOOL BOARD; AND
HILLSBOROUGH COUNTY
SCHOOL DISTRICT,

        **Defendants.**

## COMPLAINT

COME NOW the plaintiffs, LISA HERRERA and DENNIS HERRERA as Co-Personal

Representatives of the Estate of ISABELLA HERRERA, and for their complaint against the

defendants, HILLSBOROUGH COUNTY SCHOOL BOARD and HILLSBOROUGH

COUNTY SCHOOL DISTRICT, and states and alleges as follows:

### JURISDICTION AND VENUE

    1.    This Court has original jurisdiction over the subject matter of Plaintiffs' causes of

action, pursuant to 28 U.S.C. § 1331, because they arise under the Rehabilitation Act, 29 U.S.C.

§ 794, Section 504, the Americans with Disabilities Act, Title II, 42 U.S.C. §12131 et seq., and

42 U.S.C. § 1983.

    2.    The events giving rise to the claims alleged in this Complaint arose in

Hillsborough County, Florida which is within the confines of the Tampa Division of the Middle



1

District of Florida. 28 U.S.C. § 89(b). Venue in this Court is therefore proper pursuant to 28 U.S.C. § 1441(a).

3.     All conditions precedent to the bringing of this action by LISA HERRERA and DENNIS HERRERA as Co-Personal Representatives of the Estate of ISABELLA HERRERA have occurred, or their performance have been waived by Defendants.

## INTRODUCTION

4.     Plaintiffs are asserting claims for monetary damages against the named defendants under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400, et. seq., § 504 of the Rehabilitation Act of 1973 ("The Rehabilitation Act"), 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq., the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

## STATUTORY AND REGULATORY BACKGROUND

5.     The Individuals with Disabilities Education Act, 20 U.S.C. Section 1400 et.seq., (IDEA) and the regulations thereunder, 34 C.F.R. Section 300.1 et.seq., 22 Pa. Code Chapters 14 and 342, require that responsible educational agencies provide disabled children with a "free appropriate public education" (FAPE), and extensive due process procedures to effectuate that right. Under IDEA, a school district is required to identify every disabled child in its jurisdiction. 34 C.F.R. Section 300.125(a).

6.     The statute and regulations establish a comprehensive format through which a child with a disability is evaluated, her classification is determined, and an appropriate program of special education with "related services" (including transportation) is developed and implemented.

7.     The program must be developed jointly by local education agency officials and parents through an Individual Education Program ("IEP") plan. The IEP must be reasonably

calculated to afford the child meaningful educational benefit and child progress in the least restrictive environment.

8.    The rights provided to students and families by IDEA are enforceable through judicial procedures. 20 U.S.C. Section 1415; 34 C.F.R. Section 300.511.

9.    Section 504 of the Rehabilitation Act prohibits discrimination against handicapped persons in federally funded programs such as public education and requires the identification of all disabled children and the provision of appropriate special educational services and related services such as transportation. 34 C.F.R. §104.1 et. seq.

10.    Under Section 504, a "handicapped person" is defined as "any person who has a physical or mental impairment which substantially limits one or more major life activities." 34 C.F.R. Section 104.3. The term "physical or mental impairment" is defined as "any physical or psychological disorder." Id. The term "major life activities" is defined as "functions such as caring for one's self... learning, and working." Id.

11.    Under Section 504, recipients of federal funds are required to "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. Section 104.33(a). The term "appropriate education" is defined as "the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of the handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based on adherence to the procedures that satisfy the requirements of Section 104.34, 104.35, and 104.36." 34 C.F.R. Section 104.33(b).

12.    If a child is identified by a school district under IDEA, and the provisions of that Act are fulfilled, the school district's responsibilities under Section 504 are also fulfilled.

3

However, where a school district fails to conform to IDEA, or where a child is eligible under Section 504 but not IDEA, a school district must provide the services required by Section 504. 34 C.F.R. Section 104.32, et. seq.

13.     Under IDEA where school officials fail to provide a child with a disability with entitled educational services, the parents of that child may obtain a variety of other appropriate relief, including money damages. 20 U.S.C. Section 1415.

14.     Under IDEA and Section 504, educational agencies are required to provide appropriate and safe transportation for students with disabilities pursuant to three mandates of IDEA and more general mandates of Section 504. Under IDEA, the educational agencies are required to provide transportation as a "related service," as "assistive technology" and pursuant to IDEA's obligation to provide "travel training."

15.     Under IDEA, transportation is specifically included as a related service. Under IDEA's mandate, districts are required to appropriately evaluate a child's need for transportation services and to provide safe, adequate, and appropriate transportation to meet the child's educational needs. 20 U.S.C. §1401(22); 34 C.F.R. §300.24(a)and (b)15. Moreover, the regulations under IDEA explicitly include transportation as a "non-academic service" which must be provided as necessary to meet a child's special education needs. 34 C.F.R. §300.306.

16.     The regulations under Section 504 also require appropriate transportation services to meet the special education needs of a child with disabilities. 34 C.F.R. §104.33(b) and (c); 104.37(a) (2) (requirement of transportation services)and 34 C.F.R. §104.35 (requirement of appropriate evaluation for special education and related services)

17.     Under IDEA, local and state educational agencies are also required to provide assistive technology devices and services to meet the needs of students with disabilities. Such services and devices are to be provided after appropriate evaluation and training of the student

and personnel involved, and can include devices and services necessary to meet the transportation needs of students with disabilities. 20 U.S.C. §1412 (a) (12) (B) (i); 34 C.F.R. §300.5, 300.6, 300.308, 300.346 (a) (2) (v) . These requirements under IDEA are incorporated into a student's rights under Section 504 which requires that the rights of all students with disabilities be met on a basis of equality with all other students, and compliance with Section 504 is obtained for most students with disabilities via compliance with IDEA. 34 C.F.R. §104.33.

18.     Under IDEA, educational agencies are required to provide appropriate "travel training" to students with disabilities.  The concept of special education in IDEA is defined to specifically include travel training as part of IDEA's mandate and involves instruction and services which are designed to move a child effectively and safely from place to place.  34 C.F.R. §300.26(a) (2) (ii); 300.26(b) (4).  These requirements under IDEA are incorporated into a student's rights under Section 504 which requires that the rights of all students with disabilities be met on a basis of equality with all other students, and compliance with Section 504 is obtained for most students with disabilities via compliance with IDEA.  34 C.F.R. §104.33.

19.     Under IDEA and Section 504, educational agencies are required to undertake comprehensive evaluations of the needs of students in order to provide appropriate special education and related services to meet their needs.  The federal and state regulations concerning such evaluations require a comprehensive, full, and complete evaluation to meet all the special education needs of a student with disabilities, including appropriate related services such as transportation, travel training, and assistive technology.  34 C.F.R. §300.532(g) through (j).

20.     Pursuant to the Americans with Disabilities Act, appropriate and nondiscriminatory transportation services must be provided by public agencies in a safe, nondiscriminatory, efficient, and dignified manner. See 42 U.S.C. §12131 through 12150.  In

rendering services accessible to persons with disabilities, including transportation services, lifting individuals with disabilities as a means of providing access is generally prohibited. Id.

## PARTIES

21.     Plaintiffs LISA HERRERA and DENNIS HERRERA are adult citizens of Hillsborough County, State of Florida.

22.     Plaintiffs LISA HERRERA AND DENNIS HERRERA are the duly appointed Co-Personal Representatives of the Estate of ISABELLA HERRERA, their minor child who was born on July 30, 2004 and died on January 26, 2012.

23.     ISABELLA HERRERA had a neuromuscular disorder and, as a result, she was a qualified individual with disabilities under the definitions of the Rehabilitation Act, 29 U.S.C. § 794, Section 504, and the Americans with Disabilities Act, Title II, 42 U.S.C. §12131 et seq.

24.     Plaintiffs LISA HERRERA AND DENNIS HERRERA bring this action on behalf of the Estate of ISABELLA HERRERA and on their own behalf.

25.     Defendant, Hillsborough County School Board (the "County School Board"), is a governmental entity, organized under the Laws of Florida, the governing body of the Hillsborough County School District and responsible for the control, operation, organization, management, and administration of public schools in Hillsborough County, Florida.

26.     Defendant, Hillsborough County School District (the "School District"), is a governmental entity, organized under the Laws of Florida, and is part of the state system of public education and includes all public school, classes, courses of instruction and all services and activities which are under the School District officials' directions and directly related to education in the district (The County School Board and School District shall sometimes be collectively referred to hereinafter as the "School Entities").

27.     The School Entities are recipients of federal financial assistance by virtue of its receipt of funds from the United States Department of Education.

28.     At all times material hereto, the School Entities were responsible for establishing policies and procedures for Hillsborough County Public Schools and were responsible for training and/or supervising its teachers and employees, including principals, assistant principals, aides, bus attendants and bus drivers so as not to permit a policy that caused said employees to violate the Constitutional and civil rights of its students, including ISABELLA HERRERA.  The School Entities were further responsible for the training of its aides, bus attendants, bus drivers and employees as to appropriate transportation, positioning, safety, and supervision of students enrolled in Hillsborough County Public Schools.

## JURISDICTION AND VENUE

29.     This court has jurisdiction over plaintiffs' claims under IDEA, the Rehabilitation Act, the ADA, the Fourteenth Amendment to the United States Constitution, 42 U.S.C.   § 1983, and 42 U.S.C. § 1985 pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343, as these claims arise under the Constitution and the laws of the United States.

30.     Venue is proper in this court pursuant to 28 U.S.C. §1391 (b). Defendants are located within this judicial district and conduct business within this judicial district, and plaintiffs' claims arose within this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

31.     At all times relevant hereto, defendants undertook and had the duty to  provide and assist in providing safe, proper, and appropriate school bus transportation services for exceptional, disabled, handicapped, and medically fragile children such as Isabella Herrera.

7

32.     At all times relevant hereto, defendants, under color of state law, performed a public function to make available to exceptional, disabled, and handicapped children, such as Isabella Herrera, elementary education, including but not limited to transportation to and from school.

33.     At all times relevant hereto, defendants, under color of state law, received and accepted federal funding, including funding for the education and the provision of an early intervention program with early intervention services, including but not limited to safe and appropriate transportation for exceptional, disabled, and handicapped children such as Isabella Herrera.

34.     Isabella Herrera was diagnosed with a generalized neuromuscular disorder.

35.     Defendants recommended that Isabella Herrera attend her neighborhood school, Sessums Elementary and that ESE specialized transportation would be provided.

36.     Specialized ESE Transportation services were identified on her IEP including the requirement of medical equipment.

37.     Physical Therapy and Occupational Therapy services were also recommended.

38.     In the IEP dated October 5, 2011, Defendants state that Occupational and Physical Therapy will provide ongoing training to personnel as identified by the school to assist in lifting, positioning and assistive technology as needed.

39.     Defendants noted that they observed Isabella's head falling more frequently and having difficulty picking her head back up by herself.

40.     Representatives from School Entities were present at and participated in Isabella Herrera's IEP meeting on or about October 5, 2011.

41.     Defendants, nevertheless, did not fully and properly evaluate Isabella Herrera's transportation needs or formulate a proper and appropriate plan or take any appropriate action to

ensure Isabella Herrera's safety during transportation to and from school on the school bus, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to her.

42.     Although Isabella Herrera's IEP states that she required specialized ESE transportation daily with medical equipment, the defendants did not fully and properly evaluate Isabella Herrera's transportation needs or formulate a proper and appropriate plan or take any appropriate action to ensure Isabella Herrera's safety during transportation to and from school on the school bus, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to her.

43.     Defendants did not fully and properly evaluate Isabella Herrera's transportation needs or formulate a proper and appropriate plan or take any appropriate action to ensure Isabella Herrera's safety during transportation to and from school on the school bus, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to her.

44.     Prior to January 25, 2012, the defendants knew or should have known of Isabella Herrera's physical disabilities and handicaps and that the existing method of unprotected transportation for Isabella Herrera created an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to her.

45.     The defendants did not evaluate Isabella Herrera regarding positioning on the bus.

46.     The defendants did not investigate or discuss with each other options to ensure proper positioning for Isabella Herrera during transportation to and from school.

47.     The defendants did not conduct an appropriate evaluation of Isabella Herrera's transportation needs, nor did the defendants hold an IEP meeting to discuss the specifics as to

how to ensure safety and proper positioning of Isabella Herrera during transportation to and from school.

48.     The defendants did not provide an appropriately trained aide to ride on the bus with Isabella to and from school to ensure her safety, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to her.

49.     Defendants, under color of state law, provided transportation services to medically fragile children such as Isabella Herrera, without instructions or directions on how to properly position Isabella Herrera, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to Isabella Herrera.

50.     Defendants had never properly trained, informed, planned, communicated, conferred, or discussed with each other the safe and proper manner to transport disabled students in general, the safe and proper manner to transport Isabella Herrera in particular, the safe and proper manner to position students and/or wheelchairs for exceptional, disabled, handicapped, and medically fragile children, such as Isabella Herrera, thus creating an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to Isabella Herrera.

51.     On the afternoon of January 25, 2012, Isabella Herrera was placed on a Hillsborough County School bus for transportation home after school.

52.     On the afternoon of January 25, 2012, Isabella Herrera was not properly positioned and secured on the bus which created an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to Isabella Herrera.

53.     On the afternoon of January 25, 2012, Isabella Herrera was not properly secured to the bus and created an inherently dangerous and ultimately fatal situation and an unreasonable risk of harm to Isabella Herrera.

54.    The Hillsborough County school bus then began to transport Isabella Herrera home.

55.    On January 25, 2012, while travelling on the Hillsborough County School Bus, Isabella Herrera was having difficulty holding her head up, however, no assistance was given to her to properly position her where her head could remain upright.

56.    On January 25, 2012, Isabella Herrera developed an obstructed airway while travelling on the Hillsborough County school bus.

57.    After a period of time the bus attendant notices that Isabella Herrera is not able to breathe at which time there is no effort to check her airway, remove her from her chair or begin resuscitation efforts. Rather, the bus attendant calls Lisa Herrera and asks her to come to the bus.

58.    The bus driver stopped the bus at the intersection of Balm Riverview Road and Rhodine Road.

59.    Still, neither the bus attendant nor the bus driver attempt resuscitation efforts nor call 911.

60.    Instead of calling 911, the bus driver attempts to reach dispatch through the bus communication radio. The bus driver is unable to get the bus communication radio to work.

61.    Again, rather than calling 911, the bus driver uses a cell phone to call a supervisor and has a conversation with the supervisor about why the communication radio is not working.

62.    While talking to a supervisor, the bus driver states that they are located on the side of the road in front of a pediatric office.

63.    The bus attendant calls Lisa Herrera a second time rather than calling 911.

64.    Lisa Herrera arrives at the location of the bus and finds her daughter, Isabella Herrera, still in her wheel chair, unresponsive, blue and not breathing.

11

65.     Lisa Herrera instinctively takes Bella out of her wheelchair and lays her down on a seat on the bus and tries to breathe life into her daughter and calls 911.

66.     Neither the bus attendant nor the bus driver ever attempted to call 911 prior to Lisa Herrera.

67.     Paramedics arrived at the scene and transport Isabella Herrera to Brandon Regional Hospital where emergency room physicians determine that Isabella required a higher level of care.

68.     Isabella Herrera was subsequently air-lifted to St. Joseph's Children's Hospital.

69.     Upon arrival at St. Joseph's Children's Hospital, Isabella Herrera was noted to be cold.

70.     Further medical assessment was consistent with brain death on the evening of January 25, 2012.  Isabella Herrera suffered irreversible brain damage as a result of the lack of oxygen.

71.     Isabella Herrera was pronounced dead at 10:06 a.m. on January 26, 2012 as a direct and proximate result of the wrongful conduct set forth herein.

72.     Upon information and belief, prior to the incident in question, Defendants engaged in an egregious pattern and practice of failing to ensure the safety and well-being of special needs students, including but not limited to the transportation of said students and that such conduct constitutes numerous violations of the civil rights of its special-needs students, particularly Isabella Herrera.

73.     Upon information and belief, since to the incident in question, Defendants continued to engage in an egregious pattern and practice of failing to ensure the safety and well-being of special needs students, including but not limited to the transportation of said students

and that such conduct constitutes numerous violations of the civil rights of its special-needs students.

74. Defendants had actual, express, or constructive knowledge and notice of the aforementioned events.

75. Each and all of the above acts, both of omission and commission, were acts of discrimination done with deliberate indifference to Isabella Herrera's disability and each and all were a proximate cause of the damages suffered by Isabella Herrera.

76. Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights under IDEA, the Rehabilitation Act, and the ADA are federal and state entitlements, and involve property and liberty interests which were abridged, withdrawn, limited, or denied without due process of law in violation of the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

77. Defendants had a duty which arose under the United States Constitution and the laws of the United States and Florida to provide safe, proper, and appropriate special education services, including but not limited to safe and proper school bus transportation services for exceptional, disabled, handicapped, and medically fragile children such as Isabella Herrera and, while acting in concert and under color of state law, breached that duty, thus violating Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights under IDEA, the Rehabilitation Act, the ADA, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

78. The untimely death of Isabella Herrera on January 26, 2012 and the injuries, losses, damages, and increased risk of harm to Isabella Herrera and to the plaintiffs are a direct and proximate result of defendants' breach of duty to provide safe, proper, and appropriate early

intervention and special education services, including but not limited to safe and proper school bus transportation services for exceptional, disabled, handicapped, and medically fragile children such as Isabella Herrera, and the defendants' violations of IDEA, the Rehabilitation Act, the ADA, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 as set forth herein.

79.     The defendants breaches and violations set forth herein increased the risk of harm to Isabella Herrera and the plaintiffs.

80.     Plaintiffs hereby claim monetary damages and all proper losses under IDEA, the Rehabilitation Act, the ADA, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985.

81.     Lisa Herrera and Dennis Herrera, as Co-Personal Representatives of the Estate of Isabella Herrera, deceased, has employed her undersigned attorneys and has agreed to pay them a reasonable fee for their services herein.

**COUNT I**
**THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT,**
**THE FOURTEENTH AMENDMENT TO THE UNITED STATES**
**CONSTITUTION, 42 U.S.C. § 1983, AND 42 U.S.C. § 1985**

82.     Plaintiffs hereby incorporate by reference all the allegations set forth in paragraphs 1 through 81 above.

83.     Isabella Herrera was an exceptional, disabled, and handicapped child as defined by IDEA.

84.     Defendants, while acting individually and in concert and under color of state law, had violated and knew or should have known that they had violated Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights arising under IDEA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 in an outrageous and willful

manner or in a negligent or improper manner by failing to conduct an appropriate evaluation of Isabella Herrera's transportation needs and failing to properly plan for, coordinate, communicate, disseminate, and provide Isabella Herrera with a proper, safe, and free appropriate public education, special education, related services, specialized transportation equipment, assistive technology devices and services, travel training, and all entitlements provided by IDEA, including but not limited to safe, proper, and appropriate transportation to and from school.

85.     The untimely death of Isabella Herrera on January 26, 2012 and the injuries, losses, damages, and increased the risk of harm to Isabella Herrera and to the plaintiffs are a direct and proximate result of defendants' outrageous and willful or negligent or improper violations of Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights arising under IDEA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 as set forth herein and defendants' conduct increased the risk of harm to the plaintiffs..

WHEREFORE, plaintiffs Lisa Herrera and Dennis Herrera, as Co-Personal Representatives of the Estate of Isabella Herrera, deceased, and Lisa Herrera and Dennis Herrera, in their own right, seek judgment in their favor and against HILLSBOROUGH COUNTY SCHOOL BOARD and HILLSBOROUGH COUNTY SCHOOL DISTRICT ordering defendants to pay the following to plaintiffs in a sum in excess of $100,000 (One Hundred Thousand Dollars) pursuant to IDEA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 all damages recoverable under law including :

    a.   Compensatory damages for pecuniary losses, including but not limited to the cost of Isabella Herrera's medical care, equipment, and treatments;

    b.   Compensatory damages for loss of life, loss of enjoyment of life, severe and

disabling injuries, emotional pain, physical pain and mental suffering, suffering, inconvenience, mental anguish, loss of the society, association, and companionship of Isabella Herrera, and other nonpecuniary losses;

c.   Punitive damages;

d.   Pre-judgment interest;

e.   Costs of suit and fees as allowable by law;

f.   Other such relief as is deemed just and proper.

### COUNT II
### THE REHABILITATION ACT, THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983, AND 42 U.S.C. § 1985

86.   Plaintiffs hereby incorporate by reference all the allegations set forth in paragraphs 1 through 81 above.

87.   Isabella Herrera was disabled as defined by the Rehabilitation Act, 29 U.S.C. §794 (a); 34 C.F.R. Section 104, et. seq.

88.   Isabella Herrera was "otherwise qualified to participate in school activities" as defined by the Rehabilitation Act, 29 U.S.C. §794 (a); 34 C.F.R. Section 104, et. seq.

89.   Defendants, while acting individually and in concert and under color of state law, had violated and knew or should have known that they had violated Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights arising under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and the regulations thereunder, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 in an outrageous and willful manner or in a negligent or improper manner by failing to conduct an appropriate evaluation of Isabella Herrera's transportation needs, failing to properly plan for, coordinate, communicate, disseminate, and provide Isabella Herrera with a proper, safe, and free appropriate public

education, special education, related services, specialized transportation equipment, assistive technology devices and services, travel training, and all entitlements provided by the Rehabilitation Act, including but not limited to safe, proper, and appropriate transportation to and from school, and failing to accommodate properly and safely Isabella Herrera's handicap and disabilities, thus excluding Isabella Herrera from participation in, denying Isabella Herrera the benefits of, and subjecting Isabella Herrera to discrimination under the early interventions services and related services program provided by the defendants by virtue of her handicaps and disabilities.

90.     The untimely death of Isabella Herrera on January 26, 2012 and the injuries, losses, damages, and increased risk of harm to Isabella Herrera and to the plaintiffs are a direct and proximate result of defendants' outrageous and willful or negligent or improper violations of Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights arising under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and the regulations thereunder, the Fourteenth Amendment of the United States Constitution,  42 U.S.C. § 1983, and 42 U.S.C. § 1985 and defendants' conduct increased the risk of harm to the plaintiffs.

WHEREFORE, Plaintiffs Lisa Herrera and Dennis Herrera, as Co-Personal Representatives of the Estate of Isabella Herrera, deceased, and Lisa Herrera and Dennis Herrera, in their own right, seek judgment in their favor and against HILLSBOROUGH COUNTY SCHOOL BOARD and HILLSBOROUGH COUNTY SCHOOL DISTRICT ordering defendants to pay the following to plaintiffs in a sum in excess of $100,000 (One Hundred Thousand Dollars) pursuant to § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794(a) and the regulations thereunder, the Fourteenth Amendment of the United States Constitution, 42

17

U.S.C. § 1983, and 42 U.S.C. § 1985 all damages recoverable under law including the following

:

    a.    Compensatory damages for pecuniary losses, including but not limited to the cost of Isabella Herrera's medical care, equipment, and treatments;

    b.    Compensatory damages for loss of life, loss of enjoyment of life, severe and disabling injuries, emotional pain, physical pain an mental suffering, suffering, inconvenience, mental anguish, disfigurement, loss of the society, association, and companionship of Isabella Herrera, and other nonpecuniary losses;

    c.    Punitive damages;

    d.    Pre-judgment interest;

    e.    Costs of suit and fees as allowable by law;

    f.    Other such relief as is deemed just and proper.

**COUNT III**
**THE AMERICANS WITH DISABILITIES ACT, THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, 42 U.S.C. § 1983, AND 42 U.S.C. § 1985**

91.    Plaintiffs hereby incorporate by reference all the allegations set forth in paragraphs 1 through 81 above.

92.    Isabella Herrera was a "qualified individual with a disability" as defined by the ADA, 42 U.S.C. § 12101, et seq.

93.    Defendants, while acting individually and in concert and under color of state law, had violated and knew or should have known that they had violated Isabella Herrera, Lisa Herrera, and Dennis Herrera's rights arising under the ADA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 in an outrageous and willful manner or in a negligent or improper manner by failing to conduct an appropriate evaluation of

Isabella Herrera's transportation needs, failing to properly plan for, coordinate, communicate, disseminate, and provide Isabella Herrera with a proper, safe, and free appropriate public education, special education, related services, specialized transportation equipment, assistive technology devices and services, travel training, and all entitlements provided by the ADA, including but not limited to safe, proper, and appropriate transportation to and from school, and failing to accommodate properly and safely Isabella Herrera's handicaps and disabilities, thus excluding Isabella Herrera from participation in, denying Isabella Herrera the benefits of, and subjecting Isabella Herrera to discrimination under the educational services and related services program provided by the defendants by virtue of her handicaps and disabilities.

94.     The untimely death of Isabella Herrera on January 26, 2012 and the injuries, losses, damages, and increased risk of harm to Isabella Herrera and to the plaintiffs are a direct and proximate result of defendants' outrageous and willful violations of Isabella Herrera, Lisa Herrera and Dennis Herrera's rights arising under the ADA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, as set forth herein and defendants' conduct increased the risk of harm to the plaintiffs.

WHEREFORE, plaintiffs Lisa Herrera and Dennis Herrera, as Co-Personal Representatives of the Estate of Isabella Herrera, deceased, and Lisa Herrera and Dennis Herrera, in their own right, seek judgment in their favor and against HILLSBOROUGH COUNTY SCHOOL BOARD and HILLSBOROUGH COUNTY SCHOOL DISTRICT ordering defendants to pay the following to plaintiffs in a sum in excess of $100,000 (One Hundred Thousand Dollars) pursuant to the ADA, the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 all damages recoverable under law including :

a.   Compensatory damages for pecuniary losses, including but not limited to the cost of Isabella Herrera's medical care, equipment, and treatments;

b.   Compensatory damages for loss of life, loss of enjoyment of life, severe and disabling injuries, emotional pain, physical pain and mental suffering, suffering, inconvenience, mental anguish, loss of the society, association, and companionship of Isabella Herrera, and other nonpecuniary losses;

c.   Punitive damages;

d.   Pre-judgment interest;

e.   Costs of suit and fees as allowable by law;

f.   Other such relief as is deemed just and proper.

**COUNT IV**
**THE FOURTEENTH AMENDMENT TO THE UNITED STATES**
**CONSTITUTION, 42 U.S.C. § 1983, AND 42 U.S.C. § 1985**

95.   Plaintiffs hereby incorporate by reference all the allegations set forth in paragraphs 1 through 81 above.

96.   Prior to and on January 26, 2012, defendants, while acting individually and in concert and under color of state law, and with willful disregard and deliberate indifference or in a negligent or improper manner, entered into a special relationship with Isabella Herrera and created foreseeable dangers and an unreasonable risk of harm to Isabella Herrera which directly and proximately caused Isabella Herrera's death and the damages, injuries, and losses to Isabella Herrera, Lisa Herrera and Dennis Herrera as set forth herein, thereby assuming affirmative substantive due process duties under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, including but not limited to the duty to provide proper and safe school bus transportation and the duty to protect Isabella Herrera's health, safety, and welfare.

97.     The special relationship that defendants entered into with Isabella Herrera while acting individually and in concert and under color of state law, and with willful disregard and deliberate indifference or in a negligent or improper manner, arose from the government having placed Isabella Herrera in a helpless and dependent position while improperly positioned and placed on a school bus during her drive home from  school and which restrained Isabella Herrera's liberty to the point where she was left without reasonable means of self-protection, thus triggering the due process protections of the Fourteenth Amendment to the United States Constitution.

98.     Defendants, while acting individually and in concert and under color of state law, and with willful disregard and deliberate indifference or in a negligent or improper manner, had violated and knew or should have known that they had violated Isabella Herrera, Lisa Herrera and Dennis Herrera's rights to substantive due process arising under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985, including but not limited to the right to life; the right to freedom from physical harm and death; the right to safe and proper school bus transportation; the liberty interest in protecting Isabella from a dangerous environment and state created dangers; the liberty interest in protecting and preserving the life and safety of Isabella Herrera from deprivations caused by state action; the liberty interest in protecting Isabella Herrera's personal bodily integrity; the liberty interest in providing Isabella Herrera with a reasonable means of self-protection; the liberty interest in protecting Isabella Herrera's health, safety, and welfare, safety, and welfare; the liberty interest to raise Isabella Herrera; and the right to companionship and association with Isabella Herrera, thus subjecting Isabella Herrera to discrimination by virtue of her handicaps and disabilities.

99.     Defendants, while acting individually and in concert and under color of state law, and with willful disregard and deliberate indifference or in a negligent, outrageous, or improper manner, had violated and knew or should have known that they had violated Isabella Herrera, Lisa Herrera and Dennis Herrera's rights to substantive due process arising under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 by failing to conduct an appropriate evaluation of Isabella Herrera's transportation needs; failing to properly plan for, coordinate,

communicate, disseminate, and provide Isabella Herrera with a proper, safe, and free appropriate public education, special education, related services, specialized transportation equipment, assistive technology devices and services, travel training, and all entitlements provided by the Fourteenth Amendment to the United States Constitution, including but not limited to safe, proper, and appropriate transportation to and from school; and failing to accommodate properly and safely Isabella Herrera's handicap and disabilities, thus subjecting Isabella Herrera to discrimination by virtue of her handicaps and disabilities.

WHEREFORE, plaintiffs Lisa Herrera and Dennis Herrera, as Co-Personal Representatives of the Estate of Isabella Herrera, deceased, and Lisa Herrera and Dennis Herrera, in their own right, seek judgment in their favor and against HILLSBOROUGH COUNTY SCHOOL BOARD and HILLSBOROUGH COUNTY SCHOOL DISTRICT ordering defendants to pay the following to plaintiffs in a sum in excess of $100,000 (One Hundred Thousand Dollars) pursuant to the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983, and 42 U.S.C. § 1985 all damages recoverable under law including :

    a. Compensatory damages for pecuniary losses, including but not limited to the cost of Isabella Herrera's medical care, equipment, and treatments;

    b. Compensatory damages for loss of life, loss of enjoyment of life, severe and disabling injuries, emotional pain, physical pain and mental suffering, suffering, inconvenience, mental anguish, loss of the society, association, and companionship of Isabella Herrera, and other nonpecuniary losses;

    c. Punitive damages;

d.   Pre-judgment interest;

e.   Costs of suit and fees as allowable by law;

Other such relief as is deemed just and proper.

Respectfully submitted this _____ day of ~~October,~~ 2011.


Counsel for Plaintiffs

**COUNSEL:**

Steven R. Maher
Florida Bar No. 88784 6
Daniel W. Cotter
Florida Bar No. 36916
Melissa H. Powers
Florida Bar No. 132284

THE MAHER LAW FIRM, P.A.
631 W. Morse Blvd., Suite 200
Winter Park, FL  32789
Phone:  (407) 839-0866
Fax:  (407) 425-7958

24