# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**LISA HERRERA AND DENNIS HERRERA**
**AS CO-PERSONAL REPRESENTATIVES**
**OF THE ESTATE OF I.H., DECEASED,**

      **Plaintiffs,**

**v.**                            **Case No.  8:12-cv-2484-T-30EAJ**

**HILLSBOROUGH COUNTY SCHOOL**
**BOARD AND HILLSBOROUGH COUNTY**
**SCHOOL DISTRICT,**

      **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 24), Plaintiffs' Response in opposition (Dkt. 27), and Defendants' Reply (Dkt. 30). The Court, having reviewed the motion, response, reply, and being otherwise advised in the premises, concludes that Defendants' motion should be denied.

## BACKGROUND

The instant action is about the tragic death of Plaintiffs' minor child, I.H.  I.H. had a neuromuscular disorder that confined her to a wheelchair.  On the afternoon of January 25, 2012, I.H. was placed on a Hillsborough County School bus for transportation home after school.  She was not properly positioned and secured on the bus.  At some point during the

bus ride, I.H. had difficulty holding up her head.  I.H. developed an obstructed airway.  After a period of time, the bus attendant noticed that I.H. was unable to breathe, but made no effort to check I.H.'s airway, remove her from her chair, or begin resuscitation efforts.  Rather, the bus attendant called Lisa Herrera, I.H.'s mother, and asked her to come to the bus.  The bus driver stopped the bus at the intersection of Balm Riverview Road and Rhodine Road.  The bus attendant and the bus driver did not attempt to resuscitate I.H.; they also did not call 911.

Subsequently, Lisa Herrera arrived and discovered I.H., in her wheelchair, unresponsive, blue, and not breathing.  Lisa Herrera took I.H. out of her wheelchair and attempted to resuscitate her.  Lisa Herrera also called 911.  I.H. was subsequently air-lifted to St. Joseph's Children's Hospital.  Upon arrival at St. Joseph's Children's Hospital, I.H. was noted to be cold.  I.H. was pronounced dead at 10:06 a.m., on January 26, 2012.

Plaintiffs, Lisa Herrera and Dennis Herrera are the duly appointed co-personal representatives of the estate of I.H.  They bring this action against Defendants Hillsborough County School Board and Hillsborough County School District.

At the motion to dismiss stage, the Court assumes the truth of the second amended complaint's allegations.  This case is before the Court at the dismissal juncture for a second time.   In their first amended complaint, Plaintiffs attempted to state claims against Defendants under Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) (herein, "Section 504" or "Rehabilitation Act"), Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131, et seq.) (herein, "ADA"), and 42 U.S.C. § 1983 (herein, "Section 1983").  The Court granted Defendants' motion to dismiss and dismissed Plaintiffs' pleading for its

failure to state a claim upon which relief could be granted under any of the cited laws, with leave to amend.  Plaintiffs' second amended complaint attempts to state the same claims, but includes many more allegations in support of those claims.  Defendants, however, move to dismiss Plaintiffs' second amended complaint because they argue that the additional allegations "do not justify the claims made by the Plaintiffs".  (Dkt. 24).

After a close review of the second amended complaint and consideration of Defendants' arguments in favor of dismissal, the Court concludes that the second amended complaint states claims under Section 504, the ADA, and Section 1983.  The Court will not repeat the entire background of this case because it is discussed in detail in the Court's March 22, 2013 Order dismissing Plaintiff's amended complaint.  *See* Dkt. 19.  Rather, the Court will discuss Plaintiffs' additional allegations in the Court's discussion of the claims set forth below.

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true, and view the facts in a light most favorable to the plaintiff.  *See Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  On the contrary, legal conclusions "must be supported by factual allegations."  *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions

masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## **DISCUSSION**

I.   **Defendants' Arguments that the Second Amended Complaint Essentially Alleges Violations of the IDEA and Does Not Include Facts Establishing that Defendants Were Deliberately Indifferent to I.H. on the Basis of Her Disability**

Defendants argue that, although Plaintiffs do not bring a claim under the Individuals with Disabilities Act ("IDEA"), the second amended complaint essentially pleads allegations that amount to a violation of the IDEA. Defendants asserted this argument in their first motion to dismiss and the Court agreed that the majority of the allegations related to Defendants' failure to conduct an appropriate evaluation of I.H.'s transportation needs. The Court explained that in order to state a claim under Section 504, the ADA, and Section 1983, Plaintiffs must allege more than Defendants' failure to comply with the IDEA. *See C.P. v. Leon Co. Sch. Bd.*, 2005 WL 2133699, at *3 (N.D. Fla. Aug. 27, 2005) (finding that plaintiff's claims were simply "IDEA claims dressed in Rehabilitation Act or ADA clothing").

The Court also stated that in order to state a claim under Section 504, the ADA, and Section 1983, Plaintiffs needed to allege facts amounting to Defendants' "deliberate indifference". *See Liese v. Indian River County Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012). "The deliberate indifference standard requires a plaintiff to 'prove that the defendant knew that harm to a federally protected right was substantially likely and that the defendant failed to act on that likelihood.'" *See L.L. ex rel. Linda L. v. Tuscaloosa City Bd. of Educ.*, 2013

WL 169612, at *6-7 (N.D. Ala. Jan. 15, 2013) (quoting *T.W. ex rel. Wilson v. Sch. Bd. of Seminole Co.*, 610 F.3d 588 (11th Cir. 2010)).  Plaintiffs' second amended complaint meets this standard.

Specifically, Plaintiffs allege that prior to January 25, 2012, there were numerous incidents involving serious injury and/or a reckless disregard for the well-being and safety of exceptional student education (ESE) students while under Defendants' care and supervision.  In October 1999, a middle school student who had a learning disability was being transported home on a Hillsborough County school bus, was dropped off at the wrong location, and was subsequently struck by a car and killed trying to find his way home.  In February 2011, an ESE student who had profound disabilities was sent home from school with an unexplained fractured femur.  In December 2011, a young ESE student was left alone on a Hillsborough County school bus for approximately six hours.

Plaintiffs also allege that during the 2011-2012 school year, concerns were noted in I.H.'s school records and individual education plan ("IEP") about the staffs' observations that I.H.'s head was falling more frequently and she was having difficulty picking her head up by herself.  I.H.'s mother observed transportation staff having difficulty properly securing I.H.'s wheelchair.  I.H.'s mother observed on numerous occasions that school staff did not properly position I.H. in her wheelchair.  As a result of these observations, on numerous occasions, I.H.'s mother told school personnel, including transportation staff and classroom staff, that they had to tilt I.H.'s wheelchair back because I.H.'s neck was weak and her head

was floppy.  Despite such efforts, I.H. continually returned home from school with her wheelchair in the upright position.

Plaintiffs allege that Defendants knew that I.H. was having trouble keeping her head in an upright position while at school and on the bus and further recognized the need for training and positioning in her October 5, 2011 IEP, yet failed to provide I.H. with the necessary accommodations to address this known problem.  After I.H.'s death, I.H.'s mother retrieved I.H.'s wheelchair from I.H.'s school and observed that it was in an upright position.

These more detailed allegations support Plaintiffs' claim that Defendants *knew* that harm to I.H.'s federally protected rights was substantially likely and that Defendants failed to act on that likelihood.  They also sufficiently allege a failure to accommodate I.H.'s disability.  Accordingly, the Court concludes that Plaintiffs state a claim for relief under the Rehabilitation Act, the ADA, and Section 1983.

## II.     Defendants' Argument that Plaintiffs' Section 1983 Claim Fails Because the School Board Did Not Have a Duty to Affirmatively Protect I.H.

Defendants argue that Plaintiffs do not state a Section 1983 claim because Defendants did not have custody of I.H. and, thus, Defendants did not have a duty to affirmatively protect I.H.  Defendants' argument lacks merit at this stage.  As Plaintiffs point out, this argument is flawed because the second amended complaint alleges that Defendants are liable for damages based on *Defendants'* deliberately indifferent conduct toward I.H.'s constitutional rights, not any conduct based on a third party.

The cases Defendants rely on in their motion to dismiss deal with conduct by a third party, not the school itself.  Defendants are correct that in those scenarios, a plaintiff must allege a special relationship between the student and the school in order to maintain a section 1983 claim against the school.  *See generally Deshaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189 (1989).[1]  Here, however, Plaintiffs sufficiently allege that Defendants' practice, policy, or custom (as opposed to a third party's act) violated I.H.'s constitutional rights, as set forth in more detail below.

## III.   Defendants' Argument that Plaintiffs' Section 1983 Claim Fails Because Plaintiffs Do Not Sufficiently Allege a Policy or Custom

Under Section 1983, governmental entities such as Defendants may not be held liable under a theory of *respondeat superior,* but instead may be held liable only for the execution of a governmental policy or custom.  *See Sauls v. Pierce County Sch. Dist.,* 399 F.3d 1279, 1287 (11th Cir. 2005); *Quinn v. Monroe Cnty.,* 330 F.3d 1320, 1325 (11th Cir. 2003) (citing *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, (1978)).  Thus, Plaintiffs' second amended complaint must identify the government policy or custom which caused I.H.'s constitutional injury.  *See Sauls,* 399 F.3d at 1287; *Davis v. DeKalb Cnty. Sch. Dist.,* 233 F.3d 1367, 1375 (11th Cir. 2000).  Plaintiffs also must allege that the policy or custom was the moving force of the constitutional violation.  *See Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla.,* 285 F.3d 962, 967-68 (11th Cir. 2002).

---

[1] In *Deshaney*, the conduct at issue was abuse to the child by the child's father.  In *Porter* and *Worthington*, two other cases relied upon by Defendants, the conduct at issue involved improper touching by another student on the bus.

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality .... A custom is a practice that is so settled and permanent that it takes on the force of law." *See Cooper v. Dillon,* 403 F.3d 1208, 1221 (11th Cir. 2005) (citation and quotation omitted). "[A] school district is not deliberately indifferent simply because the measures it takes are ultimately ineffective...." *See Sauls,* 399 F.3d at 1285 (citing *Davis,* 233 F.3d at 1375).

Additionally, there are "limited circumstances" in which a failure to train or supervise can be the basis for liability under Section 1983. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 387 (1989). "A 'failure to train' qualifies as a municipal policy if 'the need for more or different training [is] so obvious, and the inadequacy so likely to result in the violation of constitutional rights' that the failure to train amounts to deliberate indifference to a constitutional right." *See Witsell v. Sch. Bd. of Hillsborough Cnty., Fla.*, 2011 WL 2457877, at *2 (M.D. Fla. 2011) (quoting *City of Canton*, 489 U.S. at 390). Also "[n]o basis exists for an inadequate training claim if the plaintiff alleges only a single incident to support the claim." *Witsell*, 2011 WL 2457877, at *2 (quoting *Ainsworth v. City of Tampa*, 2010 WL 2220247, at *7 (M.D. Fla. June 2, 2010)).

Plaintiffs' initial complaint alleged repeated *conclusions* of Defendants' "deliberate indifference" and "pattern, practice, and custom of failing to ensure the safety and well-being of special needs students". Plaintiffs' second amended complaint, however, includes sufficient facts of a policy, practice, or custom, which caused I.H.'s injury. For example, Plaintiffs allege that: Defendants knowingly hired a Director of ESE who had no meaningful

training, certification, or background in ESE; there were multiple incidents involving injuries and deaths of ESE students in Hillsborough County before and after I.H.'s death[2], and that these incidents demonstrate a pattern and practice of disregarding the safety and rights of ESE students; Defendants had knowledge of systemic problems in the ESE program prior to I.H.'s death; Defendants failed to meaningfully investigate, report, and address the numerous incidents involving ESE students before and after I.H.'s death; Defendants knew that they had a significant shortage of transportation staff to accommodate the needs of ESE children; with respect to I.H. specifically, Defendants were placed on notice prior to I.H.'s death that I.H. was having trouble keeping her head up by herself; and despite receiving complaints from I.H.'s mother and other staff members about the failure of school staff to properly position I.H. in her wheelchair, Defendants took no additional action or made appropriate accommodations to address the problem.

Plaintiffs also allege facts demonstrating that the numerous incidents and complaints related to the transportation staff's failure to properly handle ESE students placed Defendants on notice that their transportation staff needed additional or different training. Plaintiffs allege that Defendants' failure to properly train their transportation staff prior to I.H.'s death led to I.H.'s suffocation and ultimate death.

---

[2] Plaintiffs allege that since January 25, 2012, Defendants have continued to engage in a pattern, practice and custom of failing to ensure the safety and well-being of ESE students. Plaintiffs allege that in September 2012, a Hillsborough County school bus driver kicked an 8-year old autistic child off of a school bus and in October 2012, an ESE student was allowed to wander away from school activities and drowned in a retention pond next to the school property.

Accordingly, the Court concludes that Plaintiffs' Section 1983 claim sufficiently states a claim upon which relief may be granted at this juncture.

It is therefore **ORDERED AND ADJUDGED** that:

1.     Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. 24) is DENIED.

2.     Defendants shall file an Answer to Plaintiffs' Second Amended Complaint within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida on June 18, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2012\12-cv-2484.mtdismiss24.wpd